UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────

CHERYL A. POWERS,

                              Plaintiff,

                -vs-                                      14-CV-599-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

───────────────────────────────────

APPEARANCES:    LAW OFFICES OF KENNETH HILLER (TIMOTHY HILLER, ESQ., of
                Counsel) Buffalo, New York, for Plaintiff

                WILLIAM J. HOCHUL, JR., United States Attorney (DAVID L.
                BROWN, Special Assistant United States Attorney, of Counsel),
                Buffalo, New York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated January 11, 2016

(Item 11).

        Plaintiff Cheryl A. Powers initiated this action on July 24, 2014 pursuant to the Social

Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of

the Commissioner of Social Security ("Commissioner") denying plaintiff's application for

Social Security Disability Insurance ("SSDI") benefits under Title II of the Act (Item 1).

Plaintiff has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal

Rules of Civil Procedure (*see* Items 7, 10), and the Commissioner has moved to remand

the matter for further proceedings pursuant to section 405(g), sentence four (Item 9).  For

the following reasons, the Commissioner's motion is granted.

**BACKGROUND**

Plaintiff was born on April 2, 1956 (Tr. 104).[1]  She graduated from high school, and completed one year of college in 1979 (Tr. 135).  She reported past work activity as a hostess at a restaurant, a school monitor, a receptionist at a pediatrics office, and  a sales clerk at a shoe store  (Tr. 136).

Plaintiff filed an application for SSDI benefits on March 22, 2012, alleging disability due to right knee replacement, neck impairment, depression, degenerative arthritis, scoliosis, asthma, cataracts, and transient ischemic attacks, with an onset date of October 1, 2004, and date of last insured ("DLI") of March 31, 2010 (*see* Tr. 58, 134).   The application was denied administratively on July 3, 2010 (Tr. 62-65).  Plaintiff requested a hearing, which was held via teleconference on July 11, 2013, before Administrative Law Judge ("ALJ") Michael A. Rodriguez (Tr. 22-57).  Plaintiff appeared and testified at the hearing, and was represented by counsel.

On August 30, 2013, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 9-17).  Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Title II (*see* 20 C.F.R. § 404.1520), the ALJ found that during the period of eligibility for  SSDI  benefits,  plaintiff's  impairments  (identified  as  degenerative  disc disease/degenerative joint disease of the lumbar and cervical spine, degenerative joint disease of the knee (status post total knee replacement), depression and obesity), while

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 7).

"severe" within the meaning of the Act and considered alone or in combination, did not meet or medically equal the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 14-15).   The ALJ discussed the evidence in the record regarding the functional limitations caused by plaintiff's impairments during the relevant period, and determined that plaintiff had the residual functional capacity ("RFC") to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a),[2] "except limited to low stress jobs defined as semi-skilled jobs in a quiet environment performing repetitive or short cycle work" (Tr. 15).   Given this assessment, the ALJ found that plaintiff was capable of performing past relevant work as a receptionist, and therefore, was not under a disability within the meaning of the Act at any time from  the alleged onset date of October 1, 2004, through March 31, 2010, the DLI  (Tr. 15-17).   The ALJ's decision became the final determination of the Commissioner on May 29, 2014, when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ erred at step four of the sequential evaluation when he determined that plaintiff was capable of performing her past relevant work as a receptionist.   *See* Item 7-1.   The Commissioner seeks a remand

---

[2]"Sedentary work" is defined in the regulations as follows:

Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

for further proceedings based on the ALJ's failure to properly evaluate the plaintiff's mental impairment. *See* Item 9-1.

## DISCUSSION

### I. Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will

not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.      Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …."  42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).  As indicated above, the regulations set forth a five step process to be followed when a disability claim comes before an ALJ for

evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R.§ 404.1520.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …."  20 C.F.R. § 404.1520(c); *see also* § 404.1509 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the

ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.    The ALJ's Disability Determination

In this case, ALJ Rodriguez determined at step one of the sequential evaluation that plaintiff did not engage in substantial gainful activity during the period from the alleged onset date of October 1, 2014, through the last insured date of March 31, 2010 (Tr. 14).  At step two, the ALJ determined that plaintiff's physical and mental impairments are "severe" as that term is defined in the regulations (*id.*).

At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments of listing severity (Tr. 14).  He indicated that he considered the criteria of Listing 1.04 (*Disorders of the spine*), but found no evidence of neurological or sensory deficits that were at  listing levels prior to expiration of insured status (*id.*).  The

ALJ did not indicate whether he considered the criteria of Listing 12.04 (*Affective disorders*) or any other category of mental impairment.

As indicated above, the ALJ next determined that plaintiff had the residual functional capacity for the full range of sedentary work, limited to low stress jobs (15).  In making this assessment, the ALJ discussed the objective medical evidence pertaining to the period between the onset date and the DLI, including the reports of Dr. Daniel R. Wild, M.D., who treated plaintiff for her knee problems, including total replacement of the right knee in 2009 (Tr. 15-16; 171-75); treatment notes of Dr. Gary W. Conschafter, who provided chiropractic treatment for low back pain from 2003 through the DLI (Tr. 212-31); and a one-page letter from Denise M. Akin, LCSWR, who provided psychotherapy counseling to plaintiff from February 2010 to October 2011 (Tr. 347), which the ALJ found to contain "no evidence that [plaintiff]'s depression was at a disabling level prior to the expiration of insured status" (Tr. 16).  The ALJ also noted that the record contained no medical source opinion evidence indicating a disabling condition prior to the DLI, and gave "great weight" to the report of a state agency case analysis performed on September 11, 2010 (Tr. 393-94), indicating that "the treatment received by [plaintiff] prior to the date last insured is clearly insufficient to support the allegations of disabling conditions" (Tr. 16).

At step four of the sequential evaluation, the ALJ compared plaintiff's assessed RFC (sedentary work, low stress jobs) with the physical and mental demands of her past relevant work as a receptionist, citing the U.S. Department of Labor Dictionary of

Occupational Titles ("DOT") code 237.367-038, sedentary SVP 4.[3]  The ALJ determined

that plaintiff was capable of returning to this work because it did not require the

performance of work-related activities precluded by the assessed RFC (Tr. 17), and

therefore, that plaintiff was not under a disability at any time from the date of onset to the

DLI, ending the sequential evaluation at step four.

## IV.   Motion for Remand

As discussed above, the ALJ found at step two of the sequential evaluation that

plaintiff's depression was "severe" within the meaning of the regulations,[4] and at step three,

--------

[3]237.367-038 RECEPTIONIST (clerical) alternate titles: reception clerk

Receives callers at establishment, determines nature of business, and directs callers to destination: Obtains caller's name and arranges for appointment with person called upon. Directs caller to destination and records name, time of call, nature of business, and person called upon. May operate PBX telephone console to receive incoming messages. May type memos, correspondence, reports, and other documents. May work in office of medical practitioner or in other health care facility and be designated Outpatient Receptionist (medical ser.) or Receptionist, Doctor's Office (medical ser.). May issue visitor's pass when required. May make future appointments and answer inquiries [INFORMATION CLERK (clerical) 237.367-022]. May perform variety of clerical duties [ADMINISTRATIVE CLERK (clerical) 219.362-010] and other duties pertinent to type of establishment. May collect and distribute mail and messages.

Dictionary of Occupational Titles, U.S. Department of Labor, Office of Administrative Law Judges, App. C (4th ed. 1991).
        Specific Vocational Preparation ("SVP") is defined in the DOT as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  Dictionary of Occupational Titles, U.S. Department of Labor, Office of Administrative Law Judges, App. C (4th ed. 1991).  Level 4 is designated for jobs requiring "[o]ver 3 months up to and including 6 months" of specific vocational preparation time.  *Id.*

[4]To be considered "severe," an impairment must "significantly limit [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R § 404.1521(a), which are "the abilities and aptitudes necessary to do most jobs," listed in the regulations as:

(1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2)  Capacities for seeing, hearing, and speaking;
(3)  Understanding, carrying out, and remembering simple instructions;
(4)  Use of judgment;

that plaintiff did not have an impairment or combination of impairments that met or equaled the level of severity of any listed impairment–indicating that he considered only the criteria for evaluating the severity of disorders of the spine set forth in Listing 1.04 (*see* Tr. 14). The Commissioner concedes that this constitutes legal error requiring remand pursuant to the fourth sentence of Section 405(g), which provides that a "[c]ourt shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 405(g).

In this regard, the regulations require that when evaluating the severity of mental impairments at the second and third steps of the five-step framework, the adjudicator must apply a "special technique" in order to:

> (1)   Identify the need for additional evidence to determine impairment severity;
> (2)   Consider and evaluate functional consequences of the mental disorder(s) relevant to [the claimant's] ability to work; and
> (3)  Organize and present [the] findings in a clear, concise, and consistent manner.

20 C.F.R. § 404.1520a(a).  As explained by the Second Circuit:

> This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." § 404.1520a(b)(1).  If the claimant is found to have such an impairment, the reviewing authority must "rate the degree of functional impairment resulting from the impairment(s) in accordance with paragraph (c)," § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.  § 404.1520a(c)(3).  According to the regulations, if the degree of limitation in each of the first three areas is rated mild or better, and

---

(5)  Responding appropriately to supervision, co-workers and usual work situations; and
(6)  Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

> no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits.   § 404.1520a(d)(1).   If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. § 404.1520a(d)(2). If so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity. § 404.1520a(d)(3).

*Kohler v. Astrue*, 546 F.3d 260, 265–66 (2d Cir. 2008); *see also Petrie v. Astrue*, 412 F. App'x 401, 408 (2d. Cir. 2011); *Housser v. Colvin*, 2015 WL 162985, at *7 (W.D.N.Y. Jan. 13, 2015); 20 C.F.R. § 416.920a(b)(1), (b)(2), (c)(3), (d)(1)-(3).   The regulations also explicitly require that the ALJ's written decision's "must include a specific finding as to the degree of limitation in each of the [four] functional areas described in (§ 404.1520a(c)(3)) …," 20 C.F.R. § 404.1520a(e)(4), and the Second Court has held that an ALJ's failure to apply the special technique and include specific findings with respect to each of the four functional areas constitutes reversible error.  *Kohler*, 546 F.3d at 266-67.

The Commissioner also concedes that the ALJ failed to discharge his affirmative duty to develop the record with respect to plaintiff's mental impairment.  *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) (well-established rule in 2d Cir. that ALJ, unlike trial judge, must affirmatively develop the record in light of "essentially non-adversarial nature of a benefits proceeding."); *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) ("[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel ….").  As discussed, the ALJ simply relied on a brief summary contained in a one-page letter from Denise Akin, the social worker who provided mental health counseling

-12-

services to plaintiff from February 2010 through October 2011, as the basis for his conclusion that there was no evidence of a disabling mental condition prior to the DLI.  Ms. Akin indicated in her letter that she was "writing to provide [plaintiff's] mental health records" (Tr. 347), but those records have not been made part of the administrative record before the court, and there is nothing in the ALJ's decision to suggest that he reviewed any of plaintiff's mental health records beyond the statement in Ms. Akin's letter.  Additionally, a Psychiatric Review Technique Form ("PRTF") completed by a state agency review psychologist on July 3, 2012, indicates that there was insufficient evidence in the file to evaluate the presence of a medically determinable mental impairment or the resulting degree of functional limitation (*see* Tr. 349-61).

Finally, the Commissioner also concedes that the ALJ failed to properly evaluate whether plaintiff's work as a receptionist constituted past relevant work experience, and failed to develop the record in this regard as well.  This, in essence, is plaintiff's primary argument in support of her motion for judgment on the pleadings.  However, plaintiff contends that the appropriate remedy should be reversal and remand solely for calculation of benefits, rather than remand for further proceedings.

In this regard, remand for further administrative proceedings is ordinarily the appropriate remedy where the ALJ has failed to apply the proper legal standard, and additional findings or explanation will address gaps in the record or clarify the rationale for the ALJ's decision.  *Disarno v. Astrue*, 2008 WL 1995123, at *6 (W.D.N.Y. May 6, 2008) (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)); *see also Buck v. Colvin*, 2014 WL 338841, at *11 (W.D.N.Y. Jan. 30, 2014).  However, "when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no

purpose," reversal of the ALJ's decision and remand solely for the calculation of benefits is the appropriate remedy. *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980); *see also Fernandez v. Astrue*, 2013 WL 1291284, at *20–21 (E.D.N.Y. Mar. 28, 2013).

In this case, as the discussion above reveals, the ALJ's failure to adhere to the requirements of the regulations governing evaluation of mental impairment severity and qualification of prior employment as past relevant work can best be addressed by further development of the record in order to fill evidentiary gaps and make additional findings, with the goal of clarifying the adjudicator's rationale.  Moreover, the court's review confirms that remand for calculation of benefits would be inappropriate since, without further development, the present record does not "compel but one conclusion under" the standards for evaluating the severity of plaintiff's mental impairments or the standards for determining her capacity for past relevant work.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).

Based on this review, and upon consideration of the evidence in the administrative record as a whole, the court finds that the proper remedy under the Social Security Act, implementing regulations, and case law is remand for further proceedings, including evaluation of the severity of plaintiff's mental impairment, and development of the record in that regard; evaluation as to whether plaintiff's work as a receptionist constituted past relevant work experience, and further development of the record in that regard; and for consideration of any other issues relating to plaintiff's claim (including but not limited to the propriety of consulting a medical advisor to determine a medically reasonable date of onset).  *See* 20 C.F.R. § 404.983.

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Item 7) is denied, the Commissioner's motion for remand (Item 10) is granted, and the case is remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the matters discussed above.

The Clerk of the Court is directed to enter judgment in favor of plaintiff,[5] and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   March 24, 2016
p:\pending\2014\14-599.ssdi.mar4.2016

---

[5]It is noted that a plaintiff who wins remand of a Social Security appeal pursuant to sentence four of 42 U.S.C. § 405(g) is a "prevailing party" for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412(d), even if the plaintiff opposed the government's motion for remand.  *Shalala v. Schaefer*, 509 U.S. 292, 300 (1993); *Hernandez v. Apfel*, 2001 WL 118604, at *1 (S.D.N.Y. Feb. 8, 2001).